GUILFORD D. STRATTON and another

*vs.*

EDGAR BAILEY and wife.

Penobscot. Opinion March 31, 1888.

*Husband and wife. Collecting a debt of husband from real estate standing in wife's name. Equity.*

The burden is upon the creditor to show, that the labor and means of the debtor contributed towards the payment of real estate, the title to which stands in the name of the debtor's wife, in an equitable proceeding to collect the debt from such real estate.

It is not sufficient to show personal labor of the husband of too little value for the law to take cognizance of.

Nor that it was paid for in part by money received by the wife from boarders, it appearing that she paid so much of the bills for provisions as were consumed by the boarders.

Nor that the labor of the wife's father, at a time when he was boarding with the husband, contributed, as a donation to his daughter, the wife.

ON report.

Bill in equity. Heard on bill, answer and proofs.

The opinion states the case.

*Wilson and Woodard*, for the plaintiffs.

The question at issue is mainly of fact, and the burden of

establishing it is upon the plaintiffs. *Call* v. *Perkins*, 65 Maine, 446.

The fact is established from the testimony of the defendants themselves, that the husband must have paid a part at least of the cost of building the house. The lot was purchased in 1881. All the money the wife then had was seventy-five dollars. The lot cost one hundred dollars and the house fully six hundred dollars, and all this has been paid in full, from her savings, she says. That would require savings since 1881 greatly out of proportion to what she was able to accumulate prior to 1881.

The negotiations for purchasing the lot and building of the house were made by the husband, and he paid the builders what money they received.

They made a mortgage and the husband signed the mortgage with his wife. If he had not paid any part of the cost of the property, directly or indirectly, he had no reason to join in the conveyance ; and the fact that he did so was an admission on the part of both, that he had contributed towards the property.

The wife testifies that at one time she had eleven boarders. The profits from that business, under the circumstances, were the property of the husband. *Sampson* v. *Alexander*, 66 Maine, 182.

The labor of the husband on the house created an interest in him, and still more so did the labor of the wife's father who boarded with them the greater part of the time from 1881 to 1885. She said her father during that time did the most of the carpenter work. This he did without any other compensation than his board. That was the way he paid for his board. This board was furnished by the husband. This was a contribution greater in amount than the plaintiffs' debt against the husband.

*Barker, Vose and Barker*, for the defendants.

DANFORTH, J. The complainants having obtained a judgment against the respondent, Edgar Bailey, seek, in this process, to have it satisfied from the land described in the bill on the ground that it was in part at least paid for by his means. The respondent, Helen A., who is the wife of Edgar, claims the title. The other

respondent has now no interest in the result, he having taken his title as security for a debt which has since been paid.

The only question involved is whether the consideration, or any portion of it, was paid from the means of the husband, and upon this question the burden of proof is upon the complainants.

The testimony introduced to sustain this burden fails to make out a case. There are some facts proved, such as the husband's personal agency in the negotiation for the purchase, in the payment of money in several instances, as well as in signing papers given as security, which in themselves may have some tendency to sustain the case. But considered in the light of other circumstances proved, they are equally consistent with the theory of the defendants as with that of the plaintiffs. Notwithstanding these personal agencies of the husband, the wife is treated as the principal and the debtor in all these transactions by the parties interested. Whatever lack of means for payment there may have been on the part of the wife, judging from the evidence, we can but infer that there was a still greater lack on the part of the husband.

But the husband and wife have both testified and there is no suggestion from this, or any other source, that any third person has made any payment for the premises, but it affirmatively appears that all the payments were made by the one or the other, and by a decided preponderance that the means used for that purpose were obtained through the energy, labor and economy of the wife, with a portion claimed as a gift to her. The only question about which there can be any difficulty, is to whom did this labor and this alleged gift belong? The testimony upon this point comes largely from the husband and wife and develops three points, upon which the complainants rely for an answer in their favor.

1. The personal labor of the husband upon the underpinning and in lathing. So far as appears, no account of this was kept; from the testimony as it now stands, no value can be affixed to it and there is no reason to suppose that a further hearing would furnish any aid in this respect. On the other hand the proper inference from the testimony is that it was but a mere trifle

casually rendered and too small for the law to take cognizance of. As the burden of proof is upon the plaintiffs to show some appreciable value, as to this item they must fail.

2. The labor of the wife's father upon the house. This appears to have been of considerable amount, but the testimony clearly shows that it was not furnished by the husband, but was voluntarily rendered as a gift to the wife. True the father paid nothing for his board, and that may have been furnished by the husband. But providing the board is not a provision of the labor. It is indeed claimed that the labor was performed in consideration of the board, and to one somewhat complicated question in cross-examination, the wife gives an answer which will bear this construction. But taking the testimony upon this point as a whole and the only inference which can be fairly drawn from it, is that the labor was performed for the wife as a gift to her without any regard to the board. Whether that was furnished with or without expectation of pay is immaterial.

3. It appears that some portion of the money paid for the purchase of this property, came from keeping some boarders at one or more times. It appears from the testimony that these boarders were kept upon the premises now in question, that they were engaged by the wife upon her own responsibility, independent of her husband, kept as a business of her own, without any direction, aid or assistance from him, and to a great extent during his absence from home, the wife testifying that although the husband paid some grocery bills, perhaps enough for the family, yet when the boarders were there she "did her trading with Mr. Libbey and my boarders paid me enough to pay for their living." This as a matter of business, was outside of family duties, the income of which would belong to the wife, as much as that from a millinery or grocery store. *Colby* v. *Lamson*, 39 Maine, 119; *Oxnard* v. *Swanton*, *Id.* 125.

By R. S., c. 61, § 3, a married woman "may receive the wages of her personal labor, not performed for her own family, . . . and hold them in her own right against her husband or any other person." So far as labor was performed for these

boarders, it was not performed for her own family, even though it might be said to have been done in the family, any more than sewing or washing taken in for, outsiders. Thus this case is broadly and easily distinguishable from that of *Sampson* v. *Alexander*, 66 Maine, 182, relied upon by the plaintiffs, where all that was done by the wife, was done not only in the family, but for the family ; not only jointly with, but for the husband, under his direction, as his agent, the two working together as husband and wife.

*Bill dismissed with costs.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.